WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Matthew Frederick Pulve,

Plaintiff,

v.

Arizona Department of Corrections, a division of the State of Arizona,

Defendant.

No. CV-18-01814-PHX-DGC

**ORDER**

Plaintiff Matthew Pulve alleges that the Arizona Department of Corrections ("ADC") violated the Rehabilitation Act of 1973 ("the Act") when it declined to offer him a law enforcement position. Doc. 15. Defendant moves for summary judgment. Doc. 34. The motion is fully briefed, and no party requests oral argument. Docs. 35, 37. For the reasons set forth below, the Court will grant the motion.

**I.     Background.**

The following facts are largely undisputed. Plaintiff started work as a correctional officer for ADC in 2014. Doc. 33-1 at 5.[1] In March 2017, Plaintiff applied for a criminal special investigator position, was interviewed, and was not offered the job. *Id.* at 6, 9. ADC re-opened the position in October 2017, and Plaintiff applied again. *Id.* at 9-10.

---

[1] Citations are to page numbers placed at the top of each page by the Court's electronic filing system.

Plaintiff interviewed and received a conditional job offer, which stated: "Before ADC can make you a firm offer, you must first complete and pass all pre-employment requirements, which include employment references, a drug test, a full background history review, and a medical physical." *Id.* at 62. Because the position required certification from the Arizona Peace Officer Standards and Training Board ("AZPOST"), Plaintiff also had to pass a background investigation and be approved both by ADC and AZPOST. *Id.* at 52-53. As part of the background investigation, Plaintiff signed an AZPOST release authorizing "all civilian and government entities, military agencies, law enforcement agencies, private, and city, county, state and federal entities to release, furnish and exchange all available information" about him. *Id.* at 64. Plaintiff also filled out several questionnaires and was interviewed by Joe Hernandez, an ADC investigator. *Id.* at 72-92, 94-101.

Plaintiff was required to disclose in his questionnaire whether he had ever applied to another law enforcement agency or correctional facility. *Id.* at 75. Although Plaintiff had applied dozens of times to 14 different law enforcement agencies, including 16 times to the Arizona Department of Public Safety ("DPS") alone, he did not disclose his previous applications in the questionnaire. *Id.* at 75, 96-98.

Plaintiff previously had worked as a reserve officer for the Mesa Police Department ("Mesa PD") and as a Deputy in the Maricopa County Sheriff's Office ("MCSO"). *Id.* at 13-14. Hernandez learned that Plaintiff had performance issues relating to officer safety, command presence, and report writing in both positions. *Id.* at 38. Hernandez also learned that Plaintiff did not meet expectations in the training program with Mesa PD and was terminated by MCSO during his probationary period. *Id.* at 13, 15.

Hernandez further learned that Plaintiff enlisted in the Navy for a six-year term in July 1991, but was discharged less than a year later in April 1992. *Id.* at 16. Plaintiff's form DD-214 (his certificate of discharge) cited "other physical/mental conditions – personality disorder" as the reason. *Id.* at 20, 68. Plaintiff told Hernandez that this was incorrect and that he was discharged through an "early out" program to attend

college. *Id.* at 21. Plaintiff provided a letter from Navy Captain J. I. Maslowski, which he believed adequately addressed this issue. Doc. 36-2 at 2. But Hernandez determined that the dates and information in the letter did not support Plaintiff's claim and asked Plaintiff to authorize a release of his Navy records. Doc. 33-1 at 40-41, 105-06. Plaintiff refused, and authorized release only of the form DD-214. *Id.* at 108-09.

Plaintiff passed the medical examination, drug test, psychological examination, and polygraph examination, but failed the background investigation. *Id.* at 34-36. ADC revoked his conditional job offer on April 16, 2018. *Id.* at 103. Peter Noack, ADC's background investigations supervisor, identified three reasons: (1) Plaintiff's failure to disclose the law enforcement agencies to which he had applied, (2) his performance problems in his prior law enforcement positions, and (3) discrepancies in his Navy records. *Id.* at 34-36. Plaintiff filed this lawsuit on June 11, 2018, asserting claims under the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. Docs. 1, 15.

## II. Summary Judgment Standard.

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and all justifiable inferences are drawn in that party's favor because "[c]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions," *Anderson*, 477 U.S. at 255.

## III. The Rehabilitation Act.

Section 504 of the Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation" in a program or activity receiving federal funding. 29 U.S.C. § 794(a). "The

standards used to determine whether [the Act] has been violated in a complaint alleging employment discrimination . . . [are] the standards applied under title I of the Americans with Disabilities Act[.]" § 794(d); *see Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013) ("The Rehabilitation Act is materially identical to and the model for the ADA[.]").

The burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), applies to disability discrimination claims such as this one. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49-50 (2003) (applying *McDonnell Douglas* burden shifting to an ADA disability discrimination claim). Under this framework:

> the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination.

*Vasquez v. Cty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2003).

To state a prima facie case under the Act, a plaintiff must demonstrate that: (1) he is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of his disability. *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007) (citing *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1058 (9th Cir. 2005)). An individual is considered disabled under the Act if he has a "physical or mental impairment that substantially limits one or more major life activities," has a "record of such impairment," or is "regarded as having such an impairment." 42 U.S.C. § 12102(1).

**IV. Discussion.**

Plaintiff does not contend that he has a "physical or mental impairment that substantially limits one or more major life activities" nor that he has a "record of such impairment." *Id.* Rather, Plaintiff argues that ADC regarded him as having a disability and consequently revoked his conditional job offer. *See* Docs. 15 ¶ 16, 35 at 7. For a

"regarded as" claim, Plaintiff must show that ADC either knew he had a disability or perceived him as having one. *EEOC v. BNSF Ry. Co.*, 902 F.3d 916, 923 (9th Cir. 2018).

Plaintiff testified that when ADC revoked his conditional job offer, his initial reaction was that the decision was based on ADC's review of his Navy form DD-214, which cited "other physical/mental conditions – personality disorder" as the reason for his discharge. Docs. 33-1 at 68, 35 at 6. Plaintiff assumes that because he had previously been a peace officer and had provided his form DD-214 to other employers, ADC must have revoked his offer because they perceived him as having a mental condition. Doc. 35 at 6-7. But aside from his own assumption, Plaintiff presents no evidence from which a reasonable jury could find that ADC perceived him as having a disability.

Plaintiff knew that ADC would conduct a comprehensive background investigation that would rely, in part, on his form DD-214. *See* Doc. 33-1 at 52-53, 62. When an issue arose from the form and the letter Plaintiff provided, Hernandez sought more information which Plaintiff declined to provide. *Id.* at 21, 40-41. This does not show that ADC regarded him as having a disability; it shows that a question arose regarding the reasons for his separation from the Navy and Plaintiff failed to provide information that dispelled the question. As noted above, Plaintiff passed the psychological and medical examinations for the new position. He presents no evidence that Hernandez believed the statement in the DD-214 form or otherwise concluded that Plaintiff was disabled. Indeed, Plaintiff previously had received a promotion from ADC and underwent a psychological examination, which he passed. Docs. 33 ¶ 4, 33-1 at 34. The Court finds no genuine dispute of material fact as to whether ADC regarded him as disabled. *See Celotex*, 477 U.S. at 323.

But even if Plaintiff established a prima facie case of discrimination, ADC has articulated legitimate, non-discriminatory reasons for the revocation of his offer, and Plaintiff presents no sufficiently probative evidence that ADC's explanation was pretext for discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).

Noack identified three reasons Plaintiff failed the background investigation: (1) failure to disclose the numerous other law enforcement agencies to which he had applied, (2) performance problems in his prior law enforcement positions, and (3) discrepancies in his Navy record. Doc. 33-1 at 34-36.

Plaintiff contends that he believed he filled out the ADC questionnaire correctly and completely. Doc. 35 at 3. But he does not dispute that he failed to disclose dozens of prior applications to law enforcement agencies, including 16 to DPS alone. Docs. 33-1 at 37, 70, 96-98, 36-3 at 14-15. Noack testified that omitting information on a questionnaire can be grounds for not moving forward with a candidate. *Id.* at 35.

Nor does Plaintiff dispute that Noack considered his performance with Mesa PD and MCSO. Doc. 33-1 at 35. Noack testified that one of the reasons Plaintiff failed the background investigation was because of "his prior employment history with other law enforcement agencies because there was negative information received from both during the file review." *Id.* Plaintiff does not contest that he had performance issues in both positions relating to officer safety, command presence, and report writing. *Id.* at 38. Plaintiff failed to meet expectations in the training program with Mesa PD and was terminated by MCSO during his probationary period. *Id.* at 13, 15.

Plaintiff also failed to provide authorization to resolve the discrepancy surrounding his Navy discharge. Once Hernandez determined that he needed more information, he requested authorization for the release of all of Plaintiff's Navy records. *Id.* at 40-41. Plaintiff refused. Although he acknowledged his consent to the release of records from "all civilian and government entities, military agencies, law enforcement agencies, private, and city, county, state and federal entities" (*id.* at 19), he "felt uncomfortable" and did not know why Hernandez was asking for his medical records (Doc. 36-1 at 18). Despite consenting to a comprehensive background investigation, including the release of all of his military records, Plaintiff did not agree with Hernandez asking for medical records from his time in the Navy. Plaintiff testified: "I didn't know why [Hernandez] was asking for 25-year-old documents. And . . . I felt like the employer shouldn't be getting the medical

files." Doc. 36-1 at 20. Even though Plaintiff may have been personally confused as to why anything in his background would cause issues (*id.* at 29-30), he failed to fully cooperate with ADC by withholding authorization for the Navy records.[2]

The undisputed facts, even when construed in Plaintiff's favor, show Plaintiff's conditional offer was revoked not because ADC regarded him as disabled, but because he failed the background investigation. And Plaintiff presents no evidence – direct or otherwise – that ADC's explanation was a pretext for discrimination. *See Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (citing *McDonnell Douglas*, 411 U.S. at 804-05) (the plaintiff may succeed in showing pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's preferred explanation is unworthy of credence"). Because Plaintiff cannot meet his burden under the *McDonnell Douglas* framework, he cannot prevail.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 34) is **granted.**
2. The Clerk is directed to enter judgment and terminate this action.

Dated this 13th day of February, 2020.

David G. Campbell
Senior United States District Judge

---

[2] Plaintiff also testified that he did not provide ADC authorization for his Navy records because he does not "have complete faith in the military record system." *Id.* at 24. This does not alter the fact that he agreed to a complete background investigation and failed to authorize the release of some documents.